**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| VICTOR MADUKA, <br><br>      Plaintiff, <br><br>    v. <br><br> JOHN PHELAN, in his official capacity as Secretary of the Navy,[1] <br><br>      Defendant. | Case No. 23-cv-274 (JMC) |

**<u>MEMORANDUM OPINION</u>**

Plaintiff Victor Maduka, a Lieutenant Colonel in the Marine Corps, filed this suit against the Secretary of the Navy, who oversees the Board for Correction of Naval Records (BCNR). Maduka argues that he was subject to "wrongful, unjustified adverse remarks" in his fitness report based on his failure to accurately report his weight in accordance with Marine Corps standards. He asked the BCNR to correct the report by removing those remarks. The BCNR rejected both his initial application and his request for reconsideration. Plaintiff seeks to set aside the BCNR's final decision under the Administrative Procedure Act (APA), but he fails to prove that the BCNR's decision was arbitrary, capricious, or otherwise contrary to law. As such, the Court will affirm the BCNR's decision below, **GRANT** the Secretary's motion for summary judgment, ECF 10, and **DENY** Plaintiff's cross-motion for summary judgment, ECF 15.[2]

---

[1] The current Secretary of the Navy has been substituted for the defendant that Plaintiff named, former Secretary Carlos Del Toro. Fed. R. Civ. P. 25(d).

[2] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

## I.    BACKGROUND

In this section, the Court provides an overview of the relevant Marine Corps regulations, the process for appealing adverse reports to the Performance Evaluation Review Board (PERB) and the BCNR, and the factual and procedural history of this case.

### A.  Marine Corps Body Composition Program

This case centers around two Marine Corps Orders (MCO). First, MCO 6110.3 lays out the "Marine Corps Body Composition and Military Appearance Program" (MCBCMAP), which requires every Marine to comply with certain weight and body fat percentage standards.[3] ECF 20-1 at 1 (MCO 6110.3 with Change 1, ¶ 3(a)(1)).  The Marine Corps publishes guidance which notes that failure to comply with these standards may result in "formal assignment" to the Body Composition Program, "which decreases competitiveness for selection for promotion," and could lead to "administrative action that includes limitations on promotion, retention, assignment, or administrative separation." *Id.* at 9 (MCO 6110.3, encl. 1, ¶ 2(d)(2)). The guidance also states that fitness forms for individual Marines should contain "complete and accurate information." *Id.* at 19 (MCO 6110.3, encl. 1, ¶7(a)).

As part of this program, all active Marines are required to attend semi-annual weigh-ins, including officers who are on limited duty. ECF 20-1 at 9 (MCO 6110.3, encl. 1, ¶ 3(d)(1)) (requiring all active Marines to meet a semi-annual weigh-in requirement, "regardless of age, grade, gender, or duty assignment"). The order also requires that the "height, weight and body composition percentage" of a Marine "conducted during the official unit screening are the only

---

[3] Plaintiff also cites to MCO 6110.3A, a version of the regulation from October 2017. The Court finds that the relevant version of the MCO is MCO 6110.3 with Change 1, which became effective on March 25, 2009 and "was the governing regulation at the time of events that gave rise to this lawsuit." ECF 10 at 9 n.1.

measurements that will be recorded" on the fitness report form "for the respective reporting period." *Id.* at 20 (MCO 6110.3, encl. 1, ¶ 7(d)(1)).

## B. Marine Corps Fitness Reports

MCO 1610.7 governs the Marine Corps' Performance Evaluation System.[4] ECF 20-2 at 1. Chapter 5 of the Order covers "adverse reports," including "fitness reports." *Id.* at 89 (MCO 1610.7, ch. 5, ¶ 1(b)). Crucially, the term "fitness reports" does not refer only to a record of a Marine's physical fitness, but it instead refers to a report that is the "primary means of evaluating a Marine's performance" and assists the Commandant in the "selection of personnel for promotion, retention, career designation," and more. *Id.* at 12 (MCO 1610.7, ch.1, ¶ 4). The report is intended to document "assessments of individual performance, personal qualities, character, and potential to serve at a more senior level." *Id.* at 13 (MCO 1610.7, ch. 1, ¶ 5(b)). Chapter 5 of the Order defines circumstances under which a Marine's report will be "adverse," including when there is "unsatisfactory performance, lack of potential, or unacceptable professional character." *Id.* at 89 (MCO 1610.7, ch. 5, ¶ 1(a)). The Order states that "[p]erformance related adversity" includes when a Marine fails to meet weight requirements but does not limit other circumstances that could also constitute performance related adversity. *Id.* at 90 (MCO 1610.7, ch. 5, ¶ 1(c)(2)) (discussing referrals to the "Body Composition Program").

MCO 1610.7 also lays out the respective roles of the "Reporting Senior" and the "Reviewing Officer." The Reporting Senior is the officer who must fill out certain sections of a report, including explaining why any "shortcomings" constitute performance related adversity. *Id.*

---

[4] Plaintiff also cites to MCO 1610.7A, a version of the order from May 1, 2018. The Court finds that the version of the MCO that was in effect during the events in dispute—i.e., during the process of filling out and approving the adverse comments in the June 2015 fitness report—governs this action and will not consider MCO 1610.7A. See ECF 10 at 10 n.5 (noting that MCO 1610.7 was "effective on February 13, 2015 and [was] operative at the time of events that gave rise to this lawsuit").

at 89–93 (MCO 1610.7, ch. 5, ¶¶ 1(b), 2). The Marine who is the subject of the report then has an opportunity to make a statement in response and submit it alongside the report. *Id.* at 94 (MCO 1610.7, ch. 5, ¶ 3). Next, the Reviewing Officer "resolve[s] inconsistencies and disagreements" between the Reporting Senior and the Marine and decides whether to concur with any adverse comments from the Reporting Senior. *Id.* at 95 (MCO 1610.7, ch. 5, ¶ 4). The Reviewing Officer is also responsible for providing a "comparative assessment mark" for the Marine, assessing how the officer compares to others. *Id.* at 80 (MCO 1610.7, ch. 4, ¶ 14) (requiring the Reviewing Officer to compare the Marine's "professional abilities . . . to other Marines of the same grade").

### C.  Administrative Process for Correction of Military Records

A Marine can petition for a correction of adverse comments in their fitness report by submitting an "Application for Correction of Military Record." ECF 20-2 at 126 (MCO 1610.7, ch. 10, ¶ 3). That application goes to the Performance Evaluation Review Board, who is the "first agency responsible for substantive corrections to an individual Marine's record." *Id.* at 129 (MCO 1610.7, ch. 10, ¶ 4). The PERB will receive an advisory opinion to help it decide on the petition. *Id.* at 128 (MCO 1610.7, ch. 10, ¶ 3(d)).  If the PERB grants the petition, the fitness report will be corrected and that is the end of the case. *Id.* at 129 (MCO 1610.7, ch. 10, ¶ 4(d)). If the PERB denies the petition in whole or in part, the petition is "forwarded to the BCNR for final determination." *Id.*

By statute, the Secretary of the Navy "may correct any military record of [his] department when [he] considers it necessary to correct an error or remove an injustice" and he can do so by acting through the Board for Correction of Naval Records. 10 U.S.C. § 1552(a); 32 C.F.R. § 723.2. The BCNR consists of civilians in the Department of the Navy who are appointed by the Secretary. 32 C.F.R. § 723.2(a). While it is not "an investigative body," the

BCNR considers applications to determine if there is "error or injustice" in the records of members of the Navy or the Marine Corps. *Id.* § 723.2(b). In doing so, the BCNR relies on a "presumption of regularity" and "in the absence of substantial evidence to the contrary, will presume" that public officers have "properly discharged their official duties." *Id.* § 723.3(e)(2). When the BCNR denies relief, it will issue a "statement of the grounds for denial," which can be challenged as the agency's final action, subject to limited exceptions. *Id.* §§ 723.6(a)(3), (e).

### D. Plaintiff's Fitness Reports

At the time he filed this suit, Plaintiff was a Lieutenant Colonel who had served in the Marine Corps for over thirty years. ECF 1 ¶¶ 3–5. On November 7, 2013, Plaintiff passed a weigh-in test. *Id.* ¶ 9. In 2014, Plaintiff suffered a painful back injury and was placed on limited duty. *Id.* ¶¶ 10–11; ECF 12-3 at 5 (AR0005). By Plaintiff's own admission, he did not appear for any weigh-ins "between November 7, 2013 and the summer of 2015." ECF 1 ¶ 15. Plaintiff also acknowledges that, in preparing his fitness report for the reporting period ending on May 31, 2015, he entered his weight and body fat information "based on his old measurements from the November 7, 2013" weigh-in. *Id.* ¶ 19. At a weigh-in during June 2015, Plaintiff's weight was 246 lbs, more than forty pounds over the maximum allowable weight of 197 lbs for his height. Plaintiff's body fat percentage was 27%, while the maximum body fat percentage permitted for his age was 20%. ECF 12-3 at 5 (AR0005).

The fitness report at issue in this case went through three iterations before being finalized. The first edition dates from June 2015. ECF 12-3 at 47 (AR0047). In that report, Plaintiff's Reporting Senior, Colonel Stephen Neary, wrote in the "individual character" section of the form that Plaintiff "failed to exercise moral courage during this reporting period, because until ordered . . . he did not update his height and weight in Section A." *Id.* at 49 (AR0049).

Colonel Neary also wrote that Plaintiff "post[ed] a height and weight from a previous fitness report that was no longer accurate." *Id.* In the "leadership" section of the form, Colonel Neary stated that Plaintiff "failed to maintain his weight during this period." *Id.* at 50 (AR0050). Neary also made positive comments, noting that Plaintiff had "[u]nparalleled ability to organize and present information for senior general officers and senior executives" and created "a positive command climate for all," but reiterated that Plaintiff "must make his health and weight a priority." *Id.* at 52 (AR0052). In an accompanying statement to the report, Plaintiff stated that he took "full responsibility and accountability" for his actions. *Id.* at 54 (AR0054). He explained that his "lack of moral courage and poor judgment was influenced by a serious back injury which necessitated being placed on limited duty during the reporting period." *Id.* He also promised to "address[]" his weight and to "quickly and safely get back well within standards." *Id.*

The Reviewing Officer for Plaintiff's report, Todd Calhoun, initially did not concur with Colonel Neary, rejecting the adverse remarks in October 2015. *Id.* at 57 (AR0057) (second version of the fitness report from October 2015). Calhoun noted that Plaintiff "achieved standards within the 30-day grace period following an official weigh-in, rendering moot the adverse mark on leadership." *Id.* at 62 (AR0062). Calhoun also wrote that while Plaintiff "should have been more proactive and aggressive in addressing his physical fitness and weight issues following a serious back injury," he did not feel that Plaintiff's actions "r[o]se to the level of performance-related adversity (poor character)." *Id.* Colonel Neary then re-submitted the report in November 2015. *Id.* at 79 (AR0079). The re-submitted report focused not on Plaintiff's failure to meet weight standards, but on his attempt to pass off his 2013 weight as his 2015 weight. *See id.* at 68 (AR0068). In the section on individual character, Colonel Neary wrote that Plaintiff "failed to exercise moral courage during this reporting period for not fulfilling the requirement of

6

updating" his weight and Plaintiff "knowingly posted a height and weight" from November 2013. *Id.* In the section on leadership, Colonel Neary wrote that Plaintiff "violated" the Marine Corps' "core values by knowingly posting a false height and weight." *Id.* at 69 (AR0069). Calhoun then concurred with the re-submitted report in December 2015. *Id.* at 71 (AR0071); *id.* at 66 (AR0066) (finalized version of the fitness report from December 2015). Calhoun stated in his comments that "[d]espite the adverse nature of this report due to physical standards," Plaintiff's "performance throughout this period has otherwise been superb." *Id.* at 71 (AR0071). While Calhoun had initially marked Plaintiff as "one of the few exceptionally qualified Marines" in his comparative assessment in October 2015, *id.* at 62 (AR0062), he changed his assessment to the lower ranking of "one of the many highly qualified professionals who form the majority of this grade" in the December 2015 version of the report. *Id.* at 71 (AR0071).

### E.  Procedural History

In 2017, Plaintiff submitted an application to the PERB, seeking to remove the adverse comments in his fitness report. ECF 12-3 at 77 (AR0077); ECF 12-4 at 96 (AR0296). In his PERB petition, Plaintiff noted that he was placed on limited duty in December 2014 for a six-month period as a result of a painful and debilitating back injury. ECF 12-4 at 96 (AR0296). He recognized that he gained weight during the period from December 2014 to June 2015 and "made a serious judgment error to use [his] last height, weight and bodyfat numbers for the reporting worksheet." ECF 12-3 at 78 (AR0078). Once directed to weigh in, he was "required to get in standards within 30 days, or be assigned to the Body Composition Program and receive an adverse report." *Id.* He stated that Colonel Neary "threatened" him with either an inquiry for making false statements or an adverse report. *Id.*

The PERB met on February 8, 2018 to consider Plaintiff's petition and issued its decision later that month, concluding that the fitness report was "administratively and procedurally correct." ECF 12-4 at 92 (AR0292). First, the PERB summarized how Plaintiff did not "conduct the semi-annual weigh-ins as required" during his limited duty period and instead provided his November 7, 2013 height and weight. *Id.* Colonel Neary required Plaintiff to be weighed on June 10, 2015, "at which time he was found to be outside of standards." *Id.* The PERB went on to note that Colonel Neary did not "rest his case" for adversity on Plaintiff's medical condition or actual weight, but instead "on the fact that [Plaintiff] knowingly posted a false height and weight . . . to avoid reporting his actual weight and body fat percentage." *Id.* The PERB also credited Plaintiff's own words in which he admitted that he "made a serious judgment error" for which he "take[s] full responsibility." *Id.* As a result, the PERB found that Plaintiff failed to "establish an inaccuracy or injustice warranting the removal of the report," which was ordered to remain part of Plaintiff's official military record. *Id.* at 93 (AR0293).

On March 13, 2018, Plaintiff petitioned the BCNR for relief, arguing that the PERB decision was faulty in its reasoning. ECF 12-4 at 63 (AR0263). The BCNR issued its initial decision on his request on April 9, 2019. ECF 12-3 at 83 (AR0083). The BCNR found that "Marines who are assigned to limited duty are required to comply with established body composition standards" and that Colonel Neary "was not obligated to make additional allowances for [Plaintiff]" to fit those standards. *Id.* at 82 (AR0082). The BCNR also concluded that the adverse remarks were justified because Plaintiff "knowingly submitted a height and weight from a weigh-in conducted on 7 November 2013, instead of a current height and weight." *Id.* at 83 (AR0083). The BCNR determined that Plaintiff's statement taking "full responsibility" "support[ed] the foundation" for the adverse remarks. *Id.* Finally, the BCNR noted that while

several versions of the fitness report existed, "the version in [Plaintiff's] official military personnel file is administratively and procedurally correct." *Id.* Accordingly, Plaintiff had failed to meet his burden to "demonstrate the existence of probable material error or injustice." *Id.*

Plaintiff then sought reconsideration from the BCNR, asking it again to "modify [his] fitness report" and to promote him to Colonel effective fiscal year 2018. ECF 12-3 at 1 (AR0001). On May 24, 2022, the BCNR denied Plaintiff's application for correction of his records because it "substantially concurred" with its prior decision and with the PERB decision *Id.* at 2 (AR0002). The BCNR again noted that failure to meet the weight standard was not the only reason why Plaintiff's fitness report was adverse; the adverse nature of the report was also based on his decision to not "provide [his] current height and weight" as of summer 2015. *Id.* The BCNR considered and rejected Plaintiff's arguments that the adverse remarks were due to negative treatment by Neary, that Calhoun inappropriately changed his decision on the report, or that hypothyroidism explained or excused Plaintiff's weight gain. *Id.* Plaintiff filed his complaint in this Court, bringing his claim under the APA. 5 U.S.C. § 706; ECF 1 at 1. The Secretary filed a motion for summary judgment and Plaintiff filed a cross-motion. ECF 10; ECF 15. Each side also filed replies in support of their motions. ECF 19; ECF 22.

## II.    LEGAL STANDARD

The Court will grant a motion for summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment, "[t]he evidence is to be viewed in the light most favorable to the nonmoving party," and "the court must draw all reasonable inferences" in that party's favor. *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011). "[W]hen a party seeks review of agency action under the APA, the district judge sits as an appellate

9

tribunal." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). In other words, in an APA case, summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record." *Alston v. Lew*, 950 F. Supp. 2d 140, 143 (D.D.C. 2013).

"Under the [APA], a court may set aside an agency's final decision only if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Ams. for Safe Access v. DEA*, 706 F.3d 438, 449 (D.C. Cir. 2013) (citing 5 U.S.C. § 706(2)(A)). A court "will not disturb the decision of an agency that has examined the relevant data and articulated a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made." *Id.* That explanation need not be comprehensive; an agency must provide only a "brief statement" to explain "why it chose to do what it did." *Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014). What is more, courts review the agency's explanation with considerable deference. *Id.* at 1349–50. A court will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Id.* at 1351–52.

As stated above, the Secretary of the Navy "may correct any military record of [his] department when [he] considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). Considering the wide latitude granted to the Secretary by Congress, as well as courts' general reluctance to interfere in matters of military judgment, this Circuit has found that decisions by boards like the BCNR receive the benefit of an "unusually deferential application of the 'arbitrary or capricious' standard." *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989). This Court has previously held, like other courts in this Circuit, that "personnel decision[s]" are reviewed under this "unusually deferential standard." *Krzywicki v. Del Toro*, 755 F. Supp. 3d 1, 10 (D.D.C. 2024); *see Roberts v. United States*, 741 F.3d 152, 158 (D.C. Cir. 2014); *see also*

*Sissel v. Wormuth*, 77 F.4th 941, 947 (D.C. Cir. 2023) ("[T]he cases in which we have emphasized the need for a heightened standard of review to safeguard military judgment have involved decisions concerning active personnel, such as performance reviews and promotion decisions."); *Bennett v. Wormuth*, No. 19-cv-0131, 2023 WL 2682112, at \*10 (D.D.C. Mar. 29, 2023) (applying the "unusually deferential" standard to an APA claim where a plaintiff challenged the Army Board for Correction of Military Records' decision to not remove a "reprimand" from his record).

## III.   ANALYSIS

Plaintiff argues that the BCNR erred in refusing to remove adverse remarks made by Colonel Neary in his fitness report. But, contrary to Plaintiff's claims, the BCNR's decision accurately applied the relevant Marine Corps Orders, considered the relevant factors, and was well-explained. Accordingly, the Court will affirm the BCNR's decision and grant summary judgment in favor of the Secretary.

### A.  Contrary to Law

The Court first addresses Plaintiff's argument that the BCNR's decision was contrary to law because it is contrary to Marine Corps Orders 1610.7 and 6110.3. ECF 1 ¶¶ 84–101.

The Court begins by briefly reviewing the BCNR's decision and the bases it cited for keeping the adverse comments in Plaintiff's fitness report. First, Plaintiff, by his own admission, did not report to any weigh-ins between November 2013 and June 2015, despite being required to do so every six months. *Id.* ¶ 15; ECF 20-1 at 9 (MCO 6110.3, encl. 1, ¶ 3(d)(1)) (requiring all active Marines to meet a semi-annual weigh-in requirement). Second, in filling out his form in June 2015, Plaintiff submitted his weight from November 2013, which was no longer accurate. ECF 1 ¶ 19 (Plaintiff acknowledging that he "entered his information . . . based on his old measurements"). His reporting senior officer, Colonel Neary, then required him to attend a June

2015 weigh-in at which it was discovered that his weight was higher than reported. ECF 15-1 at 7–8 (Statement of Material Facts ¶¶ 19–21). Colonel Neary noted in adverse remarks on the fitness report that Plaintiff "failed to exercise moral courage during this reporting period for not fulfilling the requirement of updating his height and weight" and that Plaintiff "knowingly posted a height and weight from a previous weigh in." ECF 12-3 at 68 (AR0068). Colonel Neary further wrote that Plaintiff "violated" the Marine Corps' "core values by knowingly posting a false height and weight." *Id.* at 69 (AR0069).

Every decision below found that Plaintiff was appropriately subjected to adverse remarks on his fitness report because he intentionally reported his 2013 weight on a 2015 form. ECF 12-4 at 92 (AR0292) (PERB decision); *id.* at 59 (AR0259) (April 2019 BCNR decision); ECF 12-3 at 1 (AR0001) (May 2022 BCNR reconsideration decision). Plaintiff says that those conclusions are contrary to law because they failed to properly apply MCOs 6110.3 and 1610.7.[5] Plaintiff argues that MCO 6110.3 requires that the weight "conducted during the official unit screening" will be the "only measurement[]" that is recorded on an officer's fitness report. Plaintiff therefore argues that, on his 2015 report, he was *required* to list his 2013 weight because it was the last weight he had from an "official unit screening." ECF 20-1 at 20 (MCO 6110.3, encl. 1, ¶ 7(d)(1)).

Plaintiff's argument is unconvincing. The relevant subparagraph of MCO 6110.3 states that the "weight and body composition percentage . . . conducted during the official unit screening are the only measurements that will be recorded" on the fitness report "*for the respective reporting period.*" ECF 20-1 at 20 (MCO 6110.3, encl. 1, ¶ 7(d)(1)) (emphasis added). To recap, MCO 6110.3 requires officers to attend official weight screenings every six months. *Id.* at 9 (MCO

---

[5] Plaintiff makes various arguments as to why these Orders are binding upon the Marine Corps. ECF 15-1 at 27. Because the Court finds that these Orders apply, regardless of if they are binding, and were properly followed, the Court does not reach that question.

6110.3, encl. 1, ¶ 3(d)(1)). MCO 1610.7 separately requires that every Marine serving as a Lieutenant Colonel complete a fitness report by May 31st of each year.[6] ECF 20-2 at 131 (MCO 1610.7, Appendix A). And the weight reported on the fitness report should be the one from an official weigh-in conducted *during that reporting period*.

Plaintiff argues that, because he inexplicably skipped all weigh-ins between November 2013 and June 2015, he should have been permitted to list his November 2013 weight on his June 2015 fitness report as his last "official" weight. *See* ECF 1 ¶ 95. But, as the Secretary has noted in his briefing, to adopt such an interpretation would undermine the point of having regular weigh-ins, allowing officers to evade detection of non-compliance with fitness standards. ECF 19 at 13 (arguing that Marines cannot be allowed "to use measurements from one official weigh-in indefinitely on all future Fitness Reports"). Plaintiff argues that it is unclear from the Secretary's interpretation what a Marine in his shoes was supposed to do, if not to use his 2013 weight. ECF 22 at 6, 9. But the answer seems obvious: to report for a new, accurate weigh-in on the semi-annual schedule required by MCO 6110.3. Rejecting Plaintiff's implausible interpretation, the Court finds that the BCNR applied these Marine Corps Orders correctly when it concluded that Plaintiff violated the orders by failing to provide his accurate height and weight on his 2015 fitness report.

## B.  Arbitrary and Capricious

Next, Plaintiff claims that the BCNR's decision was arbitrary and capricious because it "ignored non-frivolous arguments" that Plaintiff made. ECF 1 ¶¶ 102–06. The Court will address each of his arguments in turn—that (1) the BCNR failed to consider he was following MCOs

---

[6] The Secretary's brief says that the reporting period ends on June 30 of each calendar year, ECF 10 at 11, but Plaintiff states that the reporting period ends on May 31, ECF 1 ¶ 28. The relevant chart in MCO 1610.7 appears to show that the reporting period for active Lieutenant Colonels ends on the last day of May each year and that fitness reports are due 30 days thereafter (i.e., by June 30). ECF 20-2 at 131 (MCO 1610.7, Appendix A).

6110.3 and 1610.7 in submitting his 2013 weight, *id,* ¶¶ 87–91, 104; (2) that the BCNR failed to consider his disparate and negative treatment by Colonel Neary, *id.* ¶¶ 110–12; (3) that the BCNR should have rejected Reviewing Officer Calhoun's reversal in approving the adverse remarks, *id.* ¶¶ 115–21; (4) that the BCNR failed to consider his hypothyroidism, *id.* ¶¶ 125–27; and (5) that the BCNR wrongfully used his statements of responsibility against him, *id.* ¶¶ 129–31. The Court finds that the BCNR considered and rejected each of these arguments and articulated "a rational connection between the facts found and the choice made" in doing so. *Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997). Because the BCNR's decision "address[ed] the overarching argument" of each of Plaintiff's objections, the Court rejects Plaintiff's arbitrary and capricious claim. *Buckingham v. Mabus*, 772 F. Supp. 2d 295, 301 (D.D.C. 2011).

Plaintiff's first arbitrary and capricious argument is a repackaged version of his contrary-to-law argument, which the Court has already addressed. *Supra* Section III.A. Plaintiff argues again that Colonel Neary's adverse remarks in his report were based on "insufficient grounds" because Plaintiff was "mandated" to use the measurements from his most recent official weigh-in on his form. ECF 15-1 at 36–37. The BCNR adequately explained its rationale for rejecting the argument that Plaintiff was required to re-use his 2013 weight.

Second, Plaintiff argues that Colonel Neary was trying to prevent his promotion from Lieutenant Colonel to Colonel and the BCNR failed to consider this "disparate" and "prejudicial" treatment. ECF 1 ¶ 111. As evidence, Plaintiff identified another Lieutenant Colonel whom Neary supposedly "took no administrative action against" despite that officer also failing a weigh-in. *Id.* ¶ 110; ECF 12-3 at 110 (AR0110) (statement in support of Plaintiff describing a situation where a different Lieutenant Colonel was given "a grace-period" to get within weight standards). The BCNR considered Plaintiff's argument that a "favored officer" of

Colonel Neary's also failed the weigh-in but was treated better. ECF 12-3 at 1–2 (AR0001–2). The BCNR noted that Plaintiff sought to compare apples and oranges. Plaintiff's failure to meet the weight standards was not the "sole basis" for his report's adversity; instead, the adverse remarks focused on his attempt to provide his 2013 weight. *See id.* Plaintiff has provided no evidence that the other Lieutenant Colonel similarly attempted to submit an out-of-date weight—the letter only describes an officer attending a weigh-in and failing to meet standards. *Id.* at 110 (AR0110).

Plaintiff submitted an affidavit to the BCNR in January 2022 stating that Colonel Neary sought to use the fitness report as "an opportunity to prevent [his] promotion." ECF 12-3 at 56 (AR0056). He alleges that Neary looked at him in the counseling session for the fitness report and said "[n]ever make it this easy." *Id.* Plaintiff, who is of African descent, points to Neary's 2020 removal from command for using a racial slur as proof of discriminatory motivation. *See* ECF 12-4 at 44 (AR0244) (October 2020 news article describing Neary's relief from command "amid allegations that he used a racial slur"); ECF 15-1 at 5 (Statement of Material Facts ¶ 2). The BCNR considered this argument, noting that Plaintiff believed that Neary's comment to him "reflected the intentions behind the adverse marks." ECF 12-3 at 2 (AR0002). The BCNR stated that it "found no evidence" that Plaintiff was "threatened by [Neary], that [Neary] acted inappropriately, or that he acted with malfeasance" in drafting the fitness report. *Id.* It also noted that Neary's relief from command occurred more than five years after the fitness report in question was processed and "was unrelated to the circumstances" of this case. *Id.* The Court finds that this explanation sufficiently explains why the BCNR "chose to do what it did" in rejecting Plaintiff's claims of disparate treatment. *Amerijet Int'l, Inc.*, 753 F.3d at 1350.

Third, Plaintiff argues that the BCNR failed to consider how the Reviewing Officer for his report, Todd Calhoun, unjustifiably reversed his decision on whether to concur with the adverse remarks. ECF 1 ¶¶ 116–19 (calling Calhoun's shift "unsupported"). Calhoun initially rejected Neary's adverse remarks in October 2015, but upon resubmission of the report, concurred in December 2015. *Id.* ¶¶ 52–53. Calhoun also negatively revised his comparative assessment of Plaintiff with other Marines of his grade. *Compare* ECF 12-3 at 62 (AR0062) with *id.* at 71 (AR0071). The BCNR rejected this argument by noting that the performance evaluation manual does not prohibit Reviewing Officers from changing their decision to concur or "decreasing comparative assessment marks," and does not "require justification" for doing so. ECF 12-3 at 2 (AR0002). The BCNR also found that the adverse fitness report was a sufficient basis for Calhoun to "decrease his assessment" of Plaintiff's performance and conduct. *Id.* In other words, the BCNR concluded that it was within Calhoun's discretion to accept or reject the adverse remarks and to adjust Plaintiff's comparative performance marks accordingly. *See id.* Additionally, for both Calhoun and Neary, the BCNR relied on the presumption of regularity and found that, absent significant evidence to the contrary, those officers "properly discharged their official duties." *Id.* The Court again finds no reason to overturn the BCNR's conclusions because they are "the product of reasoned decisionmaking." *Amerijet Intern., Inc.*, 753 F.3d at 1346.

Fourth, the BCNR addressed Plaintiff's argument that his hypothyroidism caused his weight gain. ECF 12-3 at 2 (AR0002). As discussed above, the adverse remarks in Plaintiff's report were primarily justified not based on Plaintiff's weight gain, but on his choice to report an out-of-date weight. *Id.* at 1–2 (AR0001–2). The existence of an underlying medical condition (that was not discovered until 2019) does not remedy or excuse Plaintiff's choice to fill out his form with his November 2013 weight. *See id.*; ECF 1 ¶ 17. In his motion for summary judgment,

16

Plaintiff argues for the first time that the BCNR mischaracterized his medical condition as "hyperthyroid condition," as opposed to hypothyroidism, and could not have properly considered his medical condition. ECF 15-1 at 43. But it is clear that the one reference to "hyperthyroid" in the BCNR decision that Plaintiff cites is a typo—other sections of the decision refer to how Plaintiff was diagnosed with "hypothyroidism." ECF 12-3 at 1–2 (AR0001–2). Additionally, the BCNR's decision did not rely on the details of Plaintiff's medical condition but focused on the lack of "evidence" from "an appropriately credentialed health care provider" that any medical condition was "the result or any underlying cause of [Plaintiff's] weight gain." *Id.*

Fifth and finally, Plaintiff argues that the BCNR erred in considering his prior statements in rendering their decision. In an addendum to each of the fitness reports at issue, Plaintiff submitted a statement admitting that he took "full responsibility and accountability" for his actions. ECF 12-3 at 54 (AR0054); *id.* at 64 (AR0064); *id.* at 73 (AR0073). The BCNR found that these statements demonstrated that Plaintiff "acknowledged" his "misconduct" in reporting the out-of-date weight, supporting his report's adversity. *Id.* at 2 (AR0002). Plaintiff argues that it was wrong for the BCNR to use those statements as evidence against him because his "acceptance of responsibility should not have been interpreted as his agreement to the allegations." ECF 1 ¶ 131. Plaintiff further argues that he never admitted that he "knowingly submitted" a form with a false weight.[7] ECF 15-1 at 30–31. In Plaintiff's view, he was only trying to "shoulder responsibility, . . . not admit legal culpability." *Id.* at 31.

---

[7] Plaintiff makes arguments both in his complaint and his motion for summary judgment that Plaintiff did not "knowingly" attempt to deceive anyone about his weight. *See, e.g.*, ECF 1 ¶ 96. Neither the BCNR nor the Court's resolution of this case hinges on a particular state of mind that Plaintiff may or may not have had in submitting his November 2013 weight. Plaintiff does not dispute that, at a minimum, he intended to submit his November 2013 weight and knew that it was the weight from that time. *Id.* ¶ 28 (Plaintiff "provided the measurements from his last official measurement for his height, weight, and body fat percentage, dated November 7, 2013 for his yearly review ending May 31, 2015."). The Court finds, as the BCNR did, that doing so was inappropriate under the governing MCOs and warranted the adverse remarks in his report.

17

The Court concludes, however, that the BCNR has "articulated a satisfactory explanation" both for considering Plaintiff's statements and for its interpretation of those statements. *Bennett*, 2023 WL 2682112, at *9. The BCNR appropriately considered Plaintiff's contemporaneous written statements accompanying the adverse reports, which are part of the administrative record. And the BCNR explained that it saw Plaintiff's statements as admitting fault not only for exceeding the weight standard, but also for submitting his November 2013 weight. Plaintiff recognized his "lack of moral courage and poor judgment," which could be seen as referencing his poor decision in submitting the 2013 weight. *See* ECF 12-3 at 54 (AR0054). He also wrote that he "made serious mistakes with regard to how [he] dealt with the situation and would absolutely do things differently" if he could do it again. *Id.* at 64 (AR0064). The BCNR rationally interpreted these statements as Plaintiff shouldering responsibility not only for his weight gain, but also his "failure to provide [his] current height and weight." *Id.* at 2 (AR0002). The BCNR has adequately explained its rationale for drawing these conclusions, satisfying the requirements of the APA. *See Amerijet Intern., Inc.*, 753 F.3d at 1350 (requiring only that an agency's statement "be one of *reasoning*").

\*     \*     \*

For the foregoing reasons, the Secretary's motion for summary judgment, ECF 10, is **GRANTED**, and Plaintiff's cross-motion for summary judgment, ECF 15, is **DENIED**. A separate order accompanies this memorandum opinion.

    **SO ORDERED.**

_____
JIA M. COBB
United States District Judge

Date: March 12, 2026

18